IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSHUN A. WHITE,<br><br>    Petitioner,<br><br>vs.<br><br>A. P. KANE, Warden,<br><br>    Respondent. | No. C 05-2416 CRB (PR)<br><br>ORDER DENYING<br>PETITION FOR A WRIT OF<br>HABEAS CORPUS |

       Petitioner, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("BPT") November 5, 2003 decision to deny him parole.

       Per order filed on October 3, 2005, the court found that petitioner's claim that the BPT's decision finding him not suitable for parole does not comport with due process appears colorable under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent instead filed a motion to dismiss on the ground that California inmates do not have a liberty interest in early release on parole that is protected by federal due process because the Supreme Court of California held in In re Dannenberg, 34 Cal. 4th 1061 (2005), that the language of California Penal Code section 3041, setting forth California's parole scheme, is not mandatory.

Per order filed on September 6, 2006, the court denied respondent's motion on the ground that the "Ninth Circuit recently rejected respondent's argument and made clear that 'California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal. 4th 1061 (2005).' Sass v. California Bd. of Prison Terms, No. 05-16455, slip op. 10563, 10566 (9th Cir. Aug. 31, 2006)." Sept. 6, 2006 Order at 2. The court reinstated its previous order and again ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has now filed an answer to the order to show cause and petitioner has filed a traverse.

## BACKGROUND

On September 18, 1984, petitioner pled guilty to second degree murder in Los Angeles County superior court and was sentenced to an indeterminate term of 15 years to life in state prison.

Petitioner has been found not suitable for parole each time he has appeared before the BPT. On November 5, 2003, petitioner appeared before the BPT for a subsequent parole consideration hearing. The BPT again found him not suitable for parole and denied him a subsequent hearing for one year.

Petitioner challenged the BPT's November 5, 2003 decision in the state superior, appellate and supreme courts. After the Supreme Court of California denied his petition for review on April 27, 2005, the instant federal petition for a writ of habeas corpus followed.

## DISCUSSION

A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even

when the petitioner is not challenging his underlying state court conviction." White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.   Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's November 5, 2003 decision finding him not suitable for parole, and denying him a subsequent hearing for one year, on the ground that the decision does not comport with due

process. Petitioner claims that the BPT's decision is not supported by some evidence in the record and is improperly based on the unchanging facts of his commitment offense and pre-commitment conduct. Petitioner also claims that the BPT is biased against life inmates and violated his plea agreement by depriving him of the reduced punishment he bargained for when he entered a guilty plea to the charged offense.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See Cal. Code Regs. tit. 15, § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has never been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole. Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in

Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same). This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." Hill, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904. Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board." Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995). In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

The record shows that the BPT panel afforded petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole.

The panel concluded that petitioner "would pose an unreasonable risk of danger to society, a threat to public safety if released from prison at this time." Nov. 5, 2003 Hr'g Tr. at 46 (Resp't Ex. H). The panel explained that it found that the offense was carried out "in vicious and brutal manner" and that it demonstrated an "exceptionally insensitive disregard for human suffering." It

also found that the motive was "inexplicable and very trivial in relation[] to the offense" and that there were multiple victims. <u>Id.</u> at 47.  Petitioner and three companions approached a parked car in which the victim and three others were seated with the intent to rob them.  When the victim made a hand motion, petitioner shot and killed him and took his money.  The panel also found that petitioner had a "record of assaultive behavior, escalating pattern of criminal conduct, [and] a history of unstable and tumultuous relationships with others" characterized by gang activity and heavy marijuana use. <u>Id.</u> at 47.  Petitioner's prior criminal history included convictions for theft and assault with a deadly weapon as a member of the "Crips" gang.  The panel further found that petitioner had failed to profit from society's previous attempts to correct his criminality, which included juvenile probation and parole. <u>Id.</u> at 47-48.  Only a few months after being released on parole, petitioner committed two robberies and the underlying murder.

The panel noted that petitioner had remained disciplinary-free since 1999, but before then had received 11 counseling memos ("128s") and eight disciplinary write-ups ("115s"). <u>Id.</u> at 48.  It expressed concern with the fact that it took a long time for petitioner to start changing his behavior in prison:  "Part of the problem for us . . . is that you did not come to prison saying right now I've got to change.  It took you a while." <u>Id.</u>  You "turned a corner" in 1999, but "you still need to distance yourself some more from [your prior negative behavior in prison]." <u>Id.</u> at 48-49.

The panel noted that petitioner's psychological report and parole pans were adequate, as was the counselor's report. <u>Id.</u> at 49.  However, this was not enough because you "need to demonstrate the ability to maintain these gains that you've accomplished.  They are fairly recent . . . ." <u>Id.</u>

The state superior court upheld the decision of the BPT and the state appellate and supreme courts summarily affirmed. The superior court reviewed the evidence relied on by the panel and determined that "the Board's findings are supported by 'some evidence.'" In re Dushun White, No. BH002801, slip op. at 3 (Cal. Super. Ct. Oct. 21, 2004) (Resp't Ex. E). Although the court found no evidence in the record that the commitment offense "included an 'exceptionally callous disregard for human suffering,' or even that the motive was 'inexplicable' or 'very trivial,'" it found that the offense was committed in a "cruel manner" because it involved multiple victims. Id. (citing Cal. Code Regs. tit. 15, § 2402(c)(1)(A)). It also found that the board's findings as to the other factors showing unsuitability were supported by some evidence in the record. Id.

The state court's rejection of petitioner's due process claim was not contrary to, or an unreasonable application of, the Hill standard, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The BPT's November 5, 2003 decision to deny petitioner parole is supported by some evidence in the record and that evidence bears some indicia of reliability. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment). The inquiry under Hill is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Hill, 474 U.S. at 455-56 (emphasis added). There is – the crime involved multiple victims, which under California law suffices to show that it was conducted in a cruel manner; petitioner has a pre-commitment record of escalating criminal activity and

unstable and tumultuous relationships with others characterized by gang activity and marijuana use; petitioner received multiple disciplinary write-ups and counseling memos while in prison; and his gains in remaining disciplinary-free, and upgrading educationally/vocationally and in terms of appreciating the impact of his actions, are relatively recent. Cf. Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability).  It is not up to this court to "reweigh the evidence." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

Petitioner argues that the BPT's continued reliance on the immutable circumstances of his murder offense and pre-commitment conduct conflicts with the Ninth Circuit's ruling in Biggs.[1]  The argument is without merit because the BPT panel's denial of parole was not based solely on petitioner's commitment offense and conduct prior to incarceration.  Much of the panel's denial decision focused on its concern that petitioner's "gains" were quite recent:

> Part of the problem for us . . . is that you did not come to prison saying right now I've got to change.  It took you a while . . . . [You] turned a corner [in 1999, but] "you still need to distance yourself some more from [your prior negative behavior in prison].
>
> . . . .
>
> [Y]ou still need to demonstrate the ability to maintain these gains that you've accomplished.  They are fairly recent . . . ."

Nov. 5, 2003 Hr'g Tr. at 48-49; see also In re Dushun White, No. BH002801, slip op. at 3 n.6 (noting that panel discussed that "[p]etitioner's gains are recent and encouraged him to continue in programming so that he can better understand the

---

[1] In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that, over time, denying a prisoner parole strictly because of the nature of his offense and his prior conduct "would raise serious questions involving his liberty interest in parole . . . and could result in a due process violation." Biggs, 334 F.3d at 916-17.

8

|   |   |
|---|---|
| 1 | factors that lead him to lead a gang lifestyle and to commit the life offense"). |
| 2 | The panel properly considered the relative recency of petitioner's gains and |
| 3 | reasonably concluded that petitioner needed to show the ability to maintain a |
| 4 | good record for a longer period of time.  After all, petitioner had been in prison |
| 5 | for nearly 15 years accumulating a significant disciplinary record before he |
| 6 | "turned a corner" in 1999 and started making "gains."  The panel's legitimate |
| 7 | concern with the relative recency of petitioner's gains constitutes some evidence |
| 8 | under Hill.  See Hill, 474 U.S. at 455-56 (inquiry under Hill is simply whether |
| 9 | there is any evidence in the record that could support the conclusion reached by |
| 10 | the BPT). |
| 11 | Petitioner also claims that the BPT is biased against life inmates and |
| 12 | violated his plea agreement by depriving him of the reduced punishment he |
| 13 | bargained for when he entered a guilty plea to the charged offense.  Both claims |
| 14 | are without merit. |
| 15 | Petitioner has set forth no evidentiary support for his bias claim.  But even |
| 16 | if he had, there is no evidence in the record indicating that this alleged bias |
| 17 | affected the BPT's decision or served as the basis for denying parole.  To the |
| 18 | contrary, the transcript from petitioner's November 5, 2003 parole hearing |
| 19 | demonstrates that he received an individualized assessment of his potential parole |
| 20 | suitability.  Petitioner's reliance on the high percentage of parole denials for life |
| 21 | inmates provides no proof of the BPT's alleged bias against parole for life |
| 22 | inmates.  Cf. California Dept. of Corrections v. Morales, 514 U.S. 499, 510-11 |
| 23 | (1995) (citing that 90% of California inmates are found unsuitable for parole as |
| 24 | evidence that deferring annual parole suitability hearings was lawful). |
| 25 | The state superior court rejected petitioner's claim that the BPT violated |
| 26 | his plea agreement: "[T]he Board was not a party to Petitioner's [plea] agreement |
| 27 |   |
| 28 | 9 |

and Petitioner received an indeterminate sentence.  Thus, while his minimum sentenced in fifteen years, he could potentially serve the maximum of life in prison."  In re Dushun White, No. BH002801, slip op. at 2 n.3.  The state court's rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  The state court reasonably determined that petitioner only bargained for the "possibility" of release on parole and that he consequently may be lawfully retained in custody for a term of life unless he is found suitable for release on parole by the BPT.  See Ricketts v. Adamson, 483 U.S. 1, 6 n.3 (1987) (construction of state court plea agreement is governed by state contract law, and federal court should not disturb a reasonable state court interpretation); see also Evenstad v. United States, 978 F.2d 1154, 1157-58 (9th Cir. 1992) (change in the law regarding parole eligibility does not render an earlier guilty plea involuntary).

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  October 26, 2007

CHARLES R. BREYER  
United States District Judge

G:\PRO-SE\CRB\HC.05\White1.denial.wpd

10